IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AARON BAUKNIGHT, | ) |
| Plaintiff, | ) |
| v. | ) 1:11cv1176 (LMB/JFA) |
| GAIL POPE, et al., | ) |
| Defendants. | ) |

F I L E D
FEB 27 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

MEMORANDUM OPINION

Plaintiff pro se Aaron Bauknight ("plaintiff" or "Bauknight"), an African-American teacher employed by the Manassas City School Board ("MCSB"), has filed this civil action against five defendants, alleging discrimination, hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and violations of his First Amendment rights. See Am. Compl. at 1-5.[1] The amended complaint names Dr. Gail Pope, Manassas Public Schools superintendent; Kenneth LaLonde, Manassas Public Schools human resources director; Osbourn High School ("OHS") principal Lukisha Barrera-Gibbs; and OHS assistant principals Dave Larson and Zella Jones.

Pope, LaLonde, and Larson filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) accompanied by a proper

---

[1] Because plaintiff does not separate his claims into counts or into numbered paragraphs, citations are to the page numbers in the amended complaint where the allegations appear.

Roseboro notice [Dkt. No. 12].[2] Defendants' memoranda, plaintiff's opposition,[3] and the original EEOC charge have been submitted, and the motion was taken under advisement. On February 15, 2012, the parties filed a Joint Stipulation of Uncontested Facts stating that plaintiff had taken no discovery, which closed on February 10, 2012, and had not identified any potential expert witnesses or named any witnesses. The final pretrial conference was held the next day.[4] For the reasons stated orally during the pretrial conference and articulated more fully below, defendants' Motion to Dismiss will be granted.

---

[2] Plaintiff first filed this civil action in Prince William County Circuit Court. See Dkt. No. 1; Defs.' Mem. Supp. Mot. to Dismiss at 1. Following defendants' removal to federal court, plaintiff amended his complaint and added Barrera-Gibbs and Jones, who have not been served.

[3] In his opposition, captioned "Background Information," plaintiff references numerous new facts not alleged in the original or amended complaints and attaches nearly ninety pages of background material [Dkt. No. 16]. These documents cannot be considered, however, without converting the pending motion into a motion for summary judgment, see Fed. R. Civ. P. 12(b)(6), and courts are not to convert a motion under Rule 12(b)(6) into one under Rule 56 without providing the parties notice and a reasonable opportunity to present additional pertinent material, see, e.g., Finley Lines Joint Protective Bd. Unit 200, v. Norfolk S. Corp., 109 F.3d 993, 996 (4th Cir. 1997). To the extent that plaintiff's filings rest on new factual allegations not contained within the amended complaint, the Court does not rely on them here.

[4] Although plaintiff, through no fault of his own, did not appear at the pretrial conference, his failure to appear did not prejudice his case. As discussed below, his claims must be dismissed as a matter of law, and his presence at the pretrial conference would not have changed the outcome.

## I. BACKGROUND

Plaintiff was hired in August 2007 by MCPS and assigned to OHS. See Am. Compl. at 1; Defs.' Mem. Supp. Mot. to Dismiss ["Defs.' Mem."] Ex. 1 at 2. On November 26, 2010, Bauknight was arrested for driving while intoxicated. See Joint Stip. Uncontested Facts ["Stip. Facts"] ¶ 3.[5] On December 16, 2010, plaintiff was charged with possession of marijuana. Id. ¶ 4. As a result, he was immediately suspended from his position at OHS and barred from being present on MCSB property during the pendency of the charge. See Am. Compl. at 2-3; Defs.' Mem. at 2. On February 22, 2011, the marijuana charge was nolle prosequi. See Stip. Facts ¶ 6. The next day, plaintiff's suspension was lifted, but he was transferred to a teaching position at the Johnson Learning Center ("JLC"). See Am. Compl. at 3; Pl.'s Background Information ["Pl.'s Opp'n"] at 12; Defs.' Mem. at 2. The transfer to JLC, where Bauknight currently teaches 7th and 8th grade physical education and social studies and receives the same salary and benefits as he received when teaching at OHS, became permanent in June 2011. See Defs.' Mem. at 2; Stip. Facts ¶ 12.

On June 23, 2011, plaintiff filed a complaint with the EEOC (hereinafter, "EEOC charge"), alleging that his transfer to the JLC, which is an alternative school, was racially motivated and constituted disparate treatment when compared to how a white

---

[5] On March 2, 2011, plaintiff was found guilty of reckless driving. See Stip. Facts ¶ 7.

3

teacher who committed a comparable infraction was treated. See Defs.' Mem. Ex. 1 at 2; see also Am. Compl. at 3 (describing the JLC). Plaintiff also claimed that he suffered "retaliat[ion] . . . after a fight that happened in 2009." Id. No other incidents were raised in the EEOC charge. On June 29, 2011, the EEOC dismissed the charge and notified plaintiff that he had ninety days in which to file a civil action in federal court. Id. Ex. 1 at 1. He timely filed his complaint, raising claims under Title VII and the First Amendment, which he alleges was violated when he was not permitted to raise his grievances about his transfer at a public school board meeting and when his temporary suspension prevented him from attending church services held on school property. See Am. Compl. ¶¶ 3, 5. Plaintiff is seeking $5.6 million in punitive damages and reinstatement to a teaching position at OHS. See id. at 6.

## II. DISCUSSION

### A. Standard of Review

Although pleadings filed by a pro se party must be "liberally construed," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations marks omitted), under Fed. R. Civ. P. 12(b)(6), "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). "Factual allegations must be enough to raise a right of relief above the speculative

level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Accordingly, the Supreme Court has held that to satisfy the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must include a plausible statement of the claim showing that the pleader is entitled to relief and providing the defendant with fair notice of "what . . . the claim is and the ground upon which it rests." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.

Motions to dismiss for failure to exhaust administrative remedies are governed by Fed. R. Civ. P. 12(b)(1), which provides for dismissal of an action when the court lacks subject matter jurisdiction. See, e.g., Edwards v. Murphy-Brown, LLC, 760 F. Supp. 2d 607, 613 (E.D. Va. 2011). Pursuant to that rule, a claim must be dismissed if the court lacks subject matter jurisdiction. The burden of proving subject matter jurisdiction always remains on the plaintiff. See, e.g., McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Lucas v. Henrico Cnty. Sch. Bd., No. 3:11cv5, 2011 WL 4590000, at *4-5 (E.D. Va. Sept. 30, 2011).

B. **Title VII Claims**

1. Exhaustion

Defendants argue that the Court lacks subject matter jurisdiction over most of plaintiff's Title VII claims because he failed to exhaust his administrative remedies. Specifically, defendants argue that plaintiff did not name any of the defendants in his EEOC charge and did not present to the EEOC most of the allegations he now raises. See Defs.' Mem. at 7-9. "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002) (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). A "party not named in the initial charge with the EEOC, ordinarily, may not be subsequently sued for alleged discrimination." Carter v. Arlington Pub. Sch. Sys., 82 F. Supp. 2d 561, 567-68 (E.D. Va. 2000)(citing Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 458 (4th Cir. 1988)). Moreover, "[t]he EEOC charge defines the scope of the plaintiff's right to institute a civil suit," meaning that "the scope of the civil action is confined . . . by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Bryant, 288 F.3d at 132.

In his EEOC charge, plaintiff named only "Manassas City Public Schools" and not any of the defendants he now sues. See Defs.' Mem.

6

Ex. 1.[6] Although an exception to the rule described in Carter exists "for cases where there is substantial identity between the defendant and the party named in the charge," 82 F. Supp. 2d at 568, only Pope could reasonably be said to share a "substantial identity" with the MCSB such that she was on fair notice of plaintiff's claim. The other defendants not named in the EEOC charge may not be forced to answer plaintiff's charges for the first time in federal court. See id. (holding that the plaintiff's supervisor, a school official, did not have "substantial identity" with the public school system). Accordingly, only Pope may remain in this action, and all other defendants must be dismissed.[7]

Defendants correctly argue that plaintiff is also barred from raising new grievances in federal court that he failed to pursue before the EEOC. See Defs.' Mem. at 8. In his EEOC charge alleging

---

[6] In his EEOC charge and his amended complaint, plaintiff incorrectly identifies his employer as the Manassas City Public School System.

[7] Had plaintiff named the other defendants in his EEOC charge, they would nonetheless have to be dismissed because individual supervisors are not subject to employer liability under Title VII. See, e.g., Lissau v. S. Foods Serc., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998); Hockaday v. Brownlee, 370 F. Supp. 2d 416, 421 (E.D. Va. 2004). Even construing Bauknight's suit as proceeding against the defendants in their official, as well as their individual, capacities, only Pope, who supervises more than fifteen employees, could qualify as an "employer" under Title VII. See McBride v. Routh, 51 F. Supp. 2d 153, 156-57 (D. Conn. 1999)(detailing the trend disallowing official capacity suits against non-employer individuals); Ngwu v. Salvation Army, No. 96 CIV 0058(DAB), 1999 WL 2873 (S.D.N.Y. Jan. 4, 1999) (dismissing Title VII official capacity claims against the individual director and supervisor). As such, only Pope qualifies as plaintiff's employer within the meaning of Title VII.

racial discrimination, Bauknight claimed only that he "was transferred to an alternative school" after being "accused of a misdemeanor" and that there had previously been "a White teacher who was suspended for 5 days with pay for selling passwords to students but was not transferred." See Defs.' Mem. Ex. 1 at 2. Additionally, plaintiff claimed that he had been "retaliated against after a fight that happened in 2009." Id. The EEOC charge, therefore, exhausts only a claim for racial discrimination based on plaintiff's transfer to the JLC and a retaliation claim for any protected activity associated with a 2009 fight.

Yet in his complaint in this Court, plaintiff alleges numerous additional acts that he believes amount to race-based harassment and hostile work environment. For example, he alleges that he was bullied by the freshman football coach, told that he had not met his teaching licensure requirements when other teachers had also not met them, removed from his position as basketball coach, eliminated from an administrator internship program, required to "attend CAMP training," "watched" by the superintendent, directed to establish office hours, instructed to comply with the OHS dress code, asked by defendant LaLonde if he had been asleep in his car, and assaulted during a basketball game by a student, who was not

8

expelled. See Am. Compl. at 1-2, 4-5.[8]

Based on a statement by plaintiff in his opposition brief that he had supplied proof of a pattern of discrimination to the EEOC, the Court reviewed the entire EEOC charge to determine whether the scope was, in fact, broader than defendants contended. This review revealed that plaintiff's aforementioned allegations are far outside the scope of the EEOC charge and therefore must be dismissed for failure to exhaust administrative remedies. See, e.g., Edwards, 760 F. Supp. 2d at 613 ("Failure to exhaust administrative remedies precludes a federal court from exercising subject matter jurisdiction in the context of Title VII.").[9] For these reasons, the Court possesses subject matter jurisdiction only as to the discrimination and retaliation claims arising out of the transfer to the JLC and a 2009 fight, and only as to Pope.

---

[8] Plaintiff also alleges incidents that are either outside the scope of any recognized cause of action or irrelevant to the issues at hand. For example, he alleges a "direct violation of Affirmative Action" in that he was the only African-American male teacher at OHS and complains that he was questioned about drug use by a security officer. See Am. Compl. at 1. Plaintiff alleges that he was accused of sexual harassment by a substitute teacher and "found not guilty," and he complains that the substitute teacher was given a permanent position. See id.; Pl.'s Opp'n at 7. Additionally, plaintiff's retaliation claim appears partially based on his assertion that refusing to remove a bandana he had worn to school, which violated the dress code, was protected activity. See Am. Compl. at 2.

[9] Defendants also argue that these allegations fail to amount to a cognizable claim. Defs.' Mem. at 11-12. Because the Court finds that it does not have jurisdiction to address these allegations, that argument will not be addressed.

9

### 2. Prima Facie Case

Finally, defendants argue that, even with respect to the claims that were exhausted, Bauknight has failed to allege a prima facie case of either discrimination or retaliation under Title VII. In a discriminatory transfer action, plaintiff must make a prima facie case that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) his employer, by reassigning him, "adversely affect[ed] 'the terms, conditions, or benefits' of employment" such that the transfer constitutes an adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment, or there is some evidence that the reassignment was racially motivated. See Peary v. Goss, 365 F. Supp. 2d 713, 721-22 (E.D. Va. 2005) (applying framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), to discriminatory transfer context); see also James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)(same). Plaintiff has clearly failed to allege sufficient facts to meet the third prong of this modified McDonnell test.

An adverse employment action is a discriminatory act that adversely affects "the terms, conditions, or benefits of the plaintiff's employment." Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). The "mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action." James, 368 F.3d at 376 (citation omitted).

10

"[R]eassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." Id. Here, plaintiff remains a teacher and receives the same pay and benefits to which he was entitled before being charged with possession of marijuana. See Boone v. Goldin, 178 F.3d 253, 255-57 (4th Cir. 1999) (holding that despite "increased stress," absent "any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action").

Federal courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by" defendants. DeJarnette v. Corning Inc., 133 F.3d 293, 298-99 (4th Cir. 1998)(citation omitted). "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." Id.; accord Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995) ("[E]mployment-discrimination laws have not vested in . . . courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."). For these reasons, the allegations in the complaint insufficiently allege that plaintiff's reassignment to the JLC was an adverse employment action. Therefore, this claim will be dismissed.

With respect to the retaliation claim, plaintiff alleged in his EEOC charge that he suffered retaliation following a 2009 fight, which he does not further describe. See Pl.'s Opp'n at 1-2. To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected conduct; (2) his employer took an adverse employment action against him; and (3) the protected conduct was causally connected to the adverse action. See, e.g., Wells v. Gates, 336 F. App'x 378, 382-83 (4th Cir. 2009); Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008). Plaintiff has not described in any respect, either in his EEOC charge or his amended complaint, what protected activity he allegedly engaged in after the 2009 fight. The only alleged protected activity in this civil action was plaintiff's EEOC charge filed on June 23, 2011, and the only alleged adverse actions that were referenced were plaintiff's initial transfer to the JLC on February 23, 2011 and the June 11, 2011 decision to make the transfer permanent. Because the alleged adverse actions took place before plaintiff engaged in protected activity, as a matter of law, those actions could not have been motivated by the filing of the EEOC charge. For these reasons, the retaliation claim must also be dismissed.

### C. First Amendment Claims

The amended complaint alleges that plaintiff's First Amendment rights were violated when he was not permitted to appear before the

12

school board to oppose his transfer from OHS to the JLC. See Am. Compl. at 5.[10] Defendants correctly argue there is no case law to support the position that the First Amendment is violated when a school superintendent transfers a teacher without honoring his request to oppose the transfer before the school board. See Defs.' Mem. at 11.

Additionally, plaintiff has alleged that his rights to free exercise of his religion and assembly were violated by defendants' December 2010 letter instructing him to remain off Manassas school property pending the resolution of the drug charge. Specifically, plaintiff alleges that he belongs to a Baptist church that meets at a middle school under the jurisdiction of the MCSB and he "[t]herefore . . . was not allowed to attend church." Id. at 3. After plaintiff was reinstated on February 22, 2011, he was allowed back on MCSB property, and he has not argued that he is currently prevented from visiting the school where his church meets. Accordingly, the issue is now moot. See Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003)("[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. The requirement that a case

---

[10] Plaintiff also argues that defendants' denial of his request to speak before the school board was a violation of its own official policy. See Am. Compl. at 5. Yet, one policy statement to which he adverts permits long-term suspensions in cases of criminal summonses or charges, such as here. Id. at 5. The other policy statement contradicts plaintiff's position by specifying that a superintendent, if authorized by the school board, has discretion to reassign teachers. Id. at 3.

13

have an actual, ongoing controversy extends throughout the pendency of the action.")(citations and internal quotation marks omitted). Moreover, plaintiff has not alleged any basis for compensatory damages that might continue to present a live controversy. See id. at 365 (dismissing claims for declaratory and injunctive relief on mootness grounds following students' graduation but considering claims for money damages).

For the above-stated reasons, plaintiff's First Amendment claims will be dismissed.

### III.  CONCLUSION

Given the jurisdictional and substantive flaws in the amended complaint and the revelation that plaintiff has not taken any discovery,[11] the amended complaint will be dismissed with prejudice. See In re PEC Solutions, Inc. Sec. Litig., 418 F.3d 379, 391 (4th Cir. 2005)("Leave to amend need not be given when amendment would be futile."); accord Dolgaleva v. Va. Beach City Pub. Schs., 365 F. App'x 820 (4th Cir. 2010)(Title VII); Mehr v. Starwood Hotels & Resorts Worldwide, Inc., 72 F. App'x 276 (6th Cir. 2003)(ADA); Willoughby v. Potomac Elec. Power Co., 100 F.3d 999 (D.C. Cir. 1996)(Title VII).

---

[11] The Court recognizes that Title VII actions are frequently resolved at the summary judgment stage after the parties have completed discovery; however, given plaintiff's failure to take any discovery, the lack of proper exhaustion of his claims before the EEOC, and the weakly pleaded allegations in the amended complaint, granting defendants' motion to dismiss is appropriate.

14

For the above-stated reasons, defendants' Motion to Dismiss [Dkt. No. 12] will be granted by an Order to be issued with this Memorandum Opinion.

Entered this 27th day of February, 2012

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge